**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

**MICHAEL BOLLWITT and
JERI BOLLWITT**                                                                                          **PLAINTIFFS**

**V.**                                                                **CIVIL ACTION NO. 1:20-cv-112-SA-DAS**

**BAPTIST MEMORIAL HOSPITAL-
GOLDEN TRIANGLE, INC., ET AL.**                                                             **DEFENDANTS**

## ORDER DENYING MOTIONS TO STRIKE

The plaintiffs, Michael Bollwitt (Bollwitt) and his wife, Jeri Bollwitt, filed two motions to strike the designation of some of the defendants' medical experts, namely Abigail Parris, R.N., Ulandera Robertson, R.N., Dr. Keith McCoy, Bradley Sumrall, PA-C, and Tyrone Rupert, N.P.

The plaintiffs argue the defendants should be judicially estopped from taking the position their treating experts are not required to provide reports because they insisted Dr. Howard, the plaintiff's treating neurosurgeon, had to provide a signed report. Because these defense experts did not provide reports, the plaintiffs argue their designations should be stricken.

The court denies the motion, finding that the elements for imposing judicial estoppel are not present. Plaintiffs' counsel chose to seek and did obtain a report from his expert instead of continuing to pursue a court ruling. Additionally the court finds the defendants' differing positions are not inconsistent, but justified under the law and facts.

## FACTUAL BACKGROUND

The plaintiffs, residents of Iowa, sued the defendants for medical negligence arising from Bollwitt's treatment at Baptist Memorial Hospital-Golden Triangle (BMH-GT). Per the plaintiffs' complaint, Bollwitt, while in Columbus, Mississippi visiting his son, went to the defendant hospital's emergency room complaining of severe jaw pain despite already being on

1

pain medications for temporomandibular joint disorder (TMJ). He was seen by Bradley Sumrall, PA-C, and discharged without being seen by a physician. Though diagnosed with an ear infection, Bollwitt was not started on antibiotics. He returned to the ER the next day with worsening pain and dehydration. Rupert, a nurse practitioner, saw Bollwitt this time, and he was again discharged without examination by a doctor.

The plaintiffs allege that as his condition continued to worsen, Jeri Bollwitt called the ER and was placed on hold for twenty-eight minutes. When the call was not answered, Mrs. Bollwitt hung up the phone and decided to pack to return to Iowa for further treatment. However, Bollwitt's condition continued to deteriorate overnight, and Jeri took him back to BMH-GT.

The third time Bollwitt was seen by Dr. McCoy who diagnosed him with mastoiditis and otitis media in the right ear, perforation of the tympanic membrane in the right ear, acute osteomyelitis at another site, sepsis, severe sepsis without septic shock, headache, right ear otalgia, and right TMJ. Bollwitt was transported via a life flight to Baptist Memorial Hospital in Memphis, Tennessee for critical care. He stayed in in Memphis for a month or more before his care was transferred to providers in his home state of Iowa. The plaintiffs allege he suffered a stroke, multiple seizures, and other complications, resulting in two brain surgeries and multiple other medical procedures. They allege Bollwitt has severe, permanent neurological damage, paralysis, and permanent hearing and visual impairment. Because of his brain damage, Bollwitt argues he is now unable to return to his profession as a commercial pilot. Additionally, he explains he cannot drive and needs constant care.

The plaintiffs seek to strike the designation of five experts all of whom were involved in some aspect of the care provided to Bollwitt at the defendant hospital. Dr. McCoy was a defendant but dismissed after his deposition. McCoy, Bradley Sumrall, P.A. and Tyrone Rupert, NP all

provided care to Bollwitt during his visits to the hospital. They work for United Emergency Services of Mississippi, LLC and Schumacher Management Services, Inc. Nurses Ulandera Robertson and Abigail Parris are former employees of the hospital and are alleged to have violated the standard of care in treating and interacting with the Bollwitts. These providers have all been designated as experts under Rule 26(a)(2)(C) which does not require a written report or history of expert testimony.

Dr. Matthew Howard, a neurosurgeon, who treated Bollwitt in Iowa beginning in February 2019, has volunteered to testify as an expert witness on the medical causation of Bollwitt's injuries, though not on standard of care or any breach of those standards. He has refused compensation for his testimony. He also will be testifying to Bollwitt's medical conditions, disability, and prognosis based on his treatment of Bollwitt in Iowa.

When the plaintiffs sought to schedule Dr. Howard's deposition, the defendants demanded Dr. Howard provide a written report as a retained expert because he was testifying about the causation of Bollwitt's injuries. The plaintiffs disagreed. This court held a telephonic discovery conference and after hearing argument, took the issue under advisement. Before the court could rule on the issue, the plaintiff opted to attempt to resolve the dispute by seeking the requested report from Dr. Howard, though reserving the right to proceed with his deposition if unable to obtain a written report. (Doc. 212-7, p.1) Dr. Howard provided the requested report, resolving the defendants' objections, and the plaintiffs now seek to strike the defense designations based on judicial estoppel.

## JUDICIAL ESTOPPEL

Judicial estoppel is an equitable doctrine employed by the courts to prevent parties from taking a position that is inconsistent with one taken in a previous proceeding. *King v. Cole's*

*Poultry, LLC*, 2016 WL 7191701 at *2 (N.D. Miss. 2016) (citing *Reed v. City of Arlington*, 650 F.3d 571, 573-74 (5th Cir. 2011)). The purpose of the doctrine is "to prevent parties from 'playing fast and loose' with (the courts) to suit the exigencies of self-interest." *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988) (citing *Scarano v. Central Ry. Co. of New Jersey,* 203 F.2d 510, 513 (3d Cir.1953)). The doctrine is invoked by the court at its discretion…." *Reed*, 650 F.3d at 574 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001)).

The courts may apply the doctrine where three elements are found. First the position of the party against whom estoppel is sought must be plainly inconsistent with its prior legal position. Second the party must have convinced a court to accept their prior inconsistent position. Finally, the party must not have acted inadvertently. *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (citing *In re Coastal Plains, Inc.*, 179 F.3d 197, 206-07 (5th Cir. 1999)).

If a party has taken inconsistent positions, the party must be given the opportunity to explain whether there is a reason for the inconsistency. *Cash v. Walgreen Co.*, No. 1:18-CV-165, 2020 WL 1846535, at *6 (N.D. Miss. Apr. 10, 2020).[1] The court may still exercise its discretion to decline to apply the doctrine as matter of equity, even where all the elements are present. The courts also consider if there is any evidence of an intent to obtain an unfair advantage. *Pegg v. Steel Dynamics,* 2018 WL 1247874 (N.D. Miss. March 9, 2018).

---

[1] The plaintiff claimed in her age discrimination claim she was qualified for her pharmacy position when terminated but later applied for social security disability. Judicial estoppel did not bar suit because the disability application was two years later and after she had broken her foot twice. *Id.* On the other hand, a court found judicial estoppel appropriate when a plaintiff claimed he was qualified for his position when he claimed he was disabled and unable to perform that job two days before his discharge. *See McClaren v. Morrison Mgt. Specialists*, 420 F.3d 457 (5th Cir. 2005).

**Did the Party Convince the Court to Accept Their Position?**

In the present case, the court finds the first factor has not been met. Plaintiffs' counsel decided to seek a report from Dr. Howard, instead of continuing to fight the defendant's demand. When the report was provided, the controversy was mooted. Being advised of the counsel's intentions, the court simply did not rule on the dispute. This missing element alone dictates that judicial estoppel cannot be applied.

**Did the Defense Take Inconsistent Positions?**

The plaintiffs must also show the second element -- that the defendants took clearly inconsistent positions, and the court finds they have not. Though the challenged defense experts and Dr. Howard have been involved in the treatment of Bollwitt, Howard, unlike the others, is the only one who is tendered to testify as an expert based on the treatment of other providers in another state that occurred prior to his involvement and treatment of Bollwitt. His testimony is not based on his personal knowledge. Therefore, the defendants are justified in relying on this factual distinction to argue that Dr. Howard is a retained expert and required to provide a report on causation. Dr. Howard had "no prior knowledge of the facts giving rise to litigation," and "no personal involvement in the facts giving rise to the litigation." *Cooper v. Meritor, Inc.*, No. 4:16-CV-52-, 2018 WL 1513006 at *2 (N.D. Miss. Mar, 27, 2018) (quoting *DiSalvatore v. Foretravel, Inc.*, No.9:14-CV150, 2016 WL 7742996 at * 2 (E. D. Tex. May 20, 2016)). The non-retained expert's involvement by contrast "arises not from his enlistment as an expert, but rather, from his ground level involvement in the events giving rise to the litigation." *Cooper,* 2018 WL 1513006.

While testifying to injury causation does not per se make a treating doctor a retained expert, the plaintiffs in this case appropriately and necessarily disclosed Dr. Howard's testimony

5

on causation related to Bollwitt's injuries pursuant to both Fed.R.Civ.Proc. 26(a)(2)(B), with a report and other required disclosures under that rule. Dr. Howard's treatment of Bollwitt began in February 2019. In their disclosure, the plaintiffs continued to argue Howard was not retained or specially employed to provide expert testimony within the meaning of Fed.R.Civ.Proc. 26 (a)(2)(B). (Doc 212-4 p. 1-3, Plaintiff's First Supplement to Initial Disclosures). The plaintiffs disclosed his testimony would be consistent with the records produced by the University of Iowa hospitals and clinics, *but also that he was expected to have reviewed the medical records from BMH-GT covering November 22- 24, 2018.* Dr. Howard would testify Bollwitt "developed a subdural empyema and venous infarction (stroke) as a result of an untreated bacterial infection involving the inner ear and mastoid bone. This led to a severe brain injury and permanent neurological deficits. Based on a reasonable degree of certainty in the field of neurosurgery, Howard opines that more likely than not, Bollwitt's subdural empyema and venous infarction (and resulting permanent neurological and physical deficits) would have been avoided if he had been diagnosed and treated with antibiotics when he first presented for medical care at Baptist Memorial-Golden Triangle." *Id*. at p. 2. Because the disclosure reveals Howard's review of, and reliance on the Mississippi records, in addition to information provided to him by Jeri Bollwitt about treatment provided in Mississippi that he was not involved in, Howard will be testifying -- at least in part -- as a retained expert. In that role, he was required to provide the 26(a)(2)(B) report and other disclosures

If testifying solely as a treating physician, Dr. Howard would be limited to "facts disclosed during care and treatment of the patient, including his diagnosis, the causation of a plaintiff's injuries, and the patient's prognosis, 'as long as the doctor formed those opinions based on [his] personal knowledge and observations obtained during the course of care and treatment.'"

6

*Barnett v. Deere & Company*, No. 2:15-CV-2, 2016 WL 4735312, at *1 (S.D. Miss. Sept. 11, 2016) (quoting *Kim v. Time Ins. Co.*, 267 F.R.D. 499, 502 (S.D. Tex. 2008)). Where a treating physician's testimony includes opinions prepared in anticipation of litigation and *relying on sources other than those arising from treatment,* such a witness is treated as a retained expert and required to provide an expert's report. *Barnett*, 2016 WL 475312 at *1. While Dr. Howard's involvement as an expert in this professional negligence action is atypical because he has volunteered to testify and is serving without compensation, he is nevertheless offering testimony and opinions outside of the scope of his treatment of Bollwitt.

In contrast, defendants have offered the treating providers to testify on their own behalf and in defense of their conduct. As treating providers, their testimony is limited to giving facts and opinions based on information known to them personally or developed during their treatment of Bollwitt. This court's local rules clarify that treating physicians, and by logical corollary other medical providers, such as these experts, will typically not be required to produce written, signed reports.

> A party must designate physicians and other witnesses who are not retained or specially employed to provide expert testimony but are expected to offer expert opinions at trial. No written report is required from such witnesses, but the party must disclose the subject matter on which the witness is expected to present evidence under Fed.R.Evid. 702, 703 or 705, and a summary of the facts and opinions to which the witness is expected to testify. The party must also supplement initial disclosures. L.U.Civ.R. Rule 26(a)(2)(D).

The defense has provided detailed summaries of the expected testimony in accordance with the requirements applicable to them.

The plaintiffs argue, however, that because the defendants relied on *Domingues v. Horseshoe Tunica* to support their argument that Dr. Howard was required to provide a report, the defense should likewise be required to provide a report for their treating experts. *Domingues*

7

*v. Horseshoe Tunica,* No. 3:19-cv-281, 2020 WL 6386979 (N.D. Miss. October 30, 2020). This is a variation on the judicial estoppel argument, but *Domingues* does not support the plaintiff's argument. In *Domingues*, the plaintiff proffered a "To Whom it May Concern" letter setting forth opinions based on a doctor's examination but did not produce any treatment records. On a defense motion to strike, the court clearly stated its doubt that this physician was a treating provider, wondering if the doctor was in the habit of including "To Whom it May Concern" letters in patient's medical records. In that case the court denied the motion to strike but without prejudice. The court stated that if information was later developed showing the letter was solicited for the purpose of the litigation, the court would be inclined to strike the testimony based on the failure to provide an expert report.

Nothing in *Domingues* alters the fact that different disclosure requirements apply to retained experts and those not specially retained or employed for litigation One set of rules applies to Dr. Howard because he is, in part, a retained expert, and the other rule applies to the treating defense expert witnesses.

The defense designated these challenged experts and provided detailed disclosures about the facts and opinions to which these providers would be testifying in accordance with Fed.R.Civ.Pro. 26(a)(2)(C). That designation and foregoing the production of an expert report will, of course, preclude them from offering opinions as retained experts, but the record does not show that the proffered testimony is outside of the scope of their designations.

The plaintiffs contend not that the entire designations should be stricken, but that the defense's treating providers are limited to stating only such facts and opinions as are contained in the medical records. This new argument is too late and lacks merit. It ignores the fact that the rules of procedure require that specific disclosures must be made for non-retained experts as a

prerequisite to allowing their testimony. It also flies in the face of common sense because medical records do not document everything that may be known to a provider about the care of a patient and likely will not mention opinions arising from the provider's knowledge. The required disclosures would be superfluous if these experts were limited to reciting the contents of a medical record.

Acccordingly, after considering the matter, the court finds that judicial estoppel is inapplicable to this case. In the present action, Dr. Howard had to provide a report to testify as an expert on causation. The defense's treating experts' disclosures follow the different rule applicable to their testimony.

The court, therefore, finds that the motions to strike the designations of Dr. McCoy, Tyrone Rupert, Bradley Sumrall, Abigail Parris and Ulandera Robertson are not well-taken and are hereby DENIED.

**SO ORDERED,** this the 4th day of November, 2022.

/s/ David A. Sanders
**U.S. MAGISTRATE JUDGE**